## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 13 2017, 9:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dwana Prince,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 13, 2017<br><br>Court of Appeals Case No.<br>49A04-1604-CR-837<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Certo, Judge<br><br>Trial Court Cause No.<br>49G12-1506-CM-21572 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Dwana Prince appeals her conviction for false reporting, arguing that the trial court erred by admitting hearsay. Finding that the court erred by admitting hearsay but that the errors were harmless, we affirm.

# Facts and Procedural History

[2] On May 25, 2015, Prince called 911 and reported that she had been carjacked near the intersection of 10th Street and Rural Avenue in Indianapolis. Officer Ronald Clayton with the Indianapolis Metropolitan Police Department was dispatched to the scene and took Prince's statement. Prince told him that a black male approached her car, opened her door, and told her to get out; she thought he had a weapon because his hand was in his shirt. She also told Officer Clayton that when she got out of the car a white male entered her car on the passenger side. While Prince was giving her statement, Officer Clayton heard on his police radio that a car traveling at a high rate of speed had crashed and flipped; a black male and white female were spotted fleeing the scene. Based on the description of the car, Officer Clayton realized it was Prince's car that had crashed, and he drove her to the crash site.

[3] At the crash site, Detective Paul Buchman took over the investigation and obtained a statement from Prince. She described the carjacker to Detective Buchman, and her description matched the driver who was seen fleeing the crash site. Police arrested the driver and placed him in jail for carjacking.

[4] Two days later, Officer Clayton, while on patrol, was approached by an unnamed individual who told the officer that Prince was lying and that she had not been carjacked. Officer Clayton immediately contacted Detective Buchman with this information. Detective Buchman then called Prince and asked to speak with her in person. She informed him that she was at home and that he was welcome to stop by. Before entering her home, Detective Buchman turned on an audio recorder and placed it in his pocket; Prince was unaware that their conversation was being recorded. During the interview, Detective Buchman told Prince that witnesses had told him that her husband had a drug problem and that her husband had given away the keys to her car because he was high. He told her he needed to know the truth. Prince admitted that she had lied about being carjacked; she said that she called 911 because her husband told her that someone had taken her car. She alone decided to tell police that she had been carjacked. Prince was charged with false informing, a Class A misdemeanor. The driver, who was initially arrested for the carjacking, was released from jail after Prince's confession.

[5] At her trial, Prince objected to Officer Clayton's testimony regarding the statements made to him from the unnamed informant. The court overruled her objection and gave a limiting instruction to the jury that Officer Clayton's testimony was not for "the truth of what the witness is asserting, but you are allowed to listen to it to hear why the officer did what he did and why the police conducted an investigation." Tr. p. 70. Prince also objected to the admission and playing of her recorded interview with Detective Buchman. *Id.*

at 104. The court overruled Prince's objection and played the recording in its entirety for the jury, including Prince's confession that she had lied about being carjacked. The court did not give the jury any type of admonishment regarding the contents of the recording. The jury found Prince guilty of false reporting.

[6] Prince now appeals.

# Discussion and Decision

[7] Prince contends that the trial court erred in admitting into evidence Officer Clayton's testimony about what the unnamed informant told him and several of the statements made by Detective Buchman on the recorded interview. She argues that both the testimony and the recording included inadmissible hearsay. "The decision to admit or exclude evidence at trial is squarely within a trial court's discretion and we afford it great deference on appeal." *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). "We review the trial court's decision regarding admissibility of evidence for an abuse of discretion. *King v. State*, 985 N.E.2d 755, 757 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs when the trial court's decision is "clearly against the logic and effect of the facts and circumstances before it." *Id.* We do not reweigh the evidence upon review. *Id.*

[8] Hearsay is an out-of-court statement that is "offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c)(2). Hearsay is generally not admissible at trial. *See* Ind. Evidence Rule 802. "Whether a

statement is hearsay . . . will most often hinge upon the purpose for which it is offered." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014) (quoting *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998)).

# I. Officer Clayton's Testimony

[9] Prince first argues that the trial court erred when it allowed Officer Clayton to testify as to the hearsay statements made to him by the unnamed informant. The State asserts that the trial court properly admitted the testimony under the course-of-investigation exception—the statements were not admitted for their truth but rather "to explain the course of [the] police investigation." *Blount*, 22 N.E.3d at 565. Our Supreme Court explained the purpose and dangers of course-of-investigation testimony in *Blount*:

> Although course-of-investigation testimony may help prosecutors give the jury some context, it is often of little consequence to the ultimate determination of guilt or innocence. The core issue at trial is, of course, what the **defendant** did (or did not do), not why the **investigator** did (or did not do) something. Thus, course-of-investigation testimony is excluded from hearsay only for a limited purpose: to bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury. . . . Indeed, such testimony is of little value absent a direct challenge to the legitimacy of the investigation. . . . There is a risk the jury will rely upon the out-of-court assertion as substantive evidence of guilt—rather than for the limited purpose of explaining [the] police investigation—and the defendant will have no chance to challenge that evidence through cross-examination. . . . The ultimate inquiry is: Was the out-of-court statement used primarily to show the truth of its content, constituting

inadmissible hearsay, or merely to explain subsequent police action, excluded from hearsay?

*Id.* at 565-66 (citations and quotations omitted).

[10] To determine if statements received by police officers engaged in an investigation meet the course-of-investigation exception, we conduct a three-part test, which was outlined in *Blount*. First, we determine if the testimony described an out-of-court statement that asserts a fact susceptible of being true or false. *Id.* at 566. Second, we determine the evidentiary purpose of the proffered statement. *Id.* at 567. Third, we determine if the fact to be proven by the statement is relevant to some issue in the case, and if there is any danger of prejudice that outweighs the probative value. *Id.* The parties concede parts one and two; therefore, our analysis addresses only part three.

[11] At trial, after the jury was instructed to consider the unnamed informant's statements only for why the police conducted its investigation (and not for the truth), Officer Clayton testified as follows:

> [Officer Clayton]: [The informant] said that [the driver] did not take the car as a carjacking, that the car was given to him by Ms. Prince's husband for a cocaine deal, sale, that he does it all of the time. He comes down here on 10th Street. He buys cocaine. He will then also have a female go back to their house and they will smoke the cocaine inside the house while he has intercourse with the female–
> [Defense Attorney]: Objection.

[Court]: All right.  We're done.  Yes.  We're done.  Sustained.  Next question.[1]

Tr. p. 71.  While this testimony explained why the police spoke with Prince again, it also accused Prince of being married to a habitual drug user who engages in extramarital affairs.  This type of testimony is "of little value absent a direct challenge to the legitimacy of the investigation." *Blount*, 22 N.E.3d at 565.  That is not the case here; Prince does not allege that the police acted improperly when they continued to investigate her carjacking story after making the initial arrest.  Rather, she challenges the admission of Officer Clayton's testimony as irrelevant and unfairly prejudicial.  We agree.

[12]  Officer Clayton's testimony about what the informant told him had little probative value when considered for the proffered reason of explaining why the police continued their investigation.  All Officer Clayton needed to say to explain why the police continued its investigation was that an informant's tip led them to further investigate the truth of Prince's carjacking report.  The rest of Officer Clayton's testimony offered no probative value to the State's case against Prince and was prejudicial to her.  Accordingly, the admission of Officer Clayton's testimony under the course-of-investigation exception was error.

---

[1] The State does not argue that Prince waived this argument by failing to make a timely objection or by failing to request an admonishment once the objection was sustained.  Therefore, we reach the merits of this issue.

# II. Recorded Interview

Prince next argues that some of Detective Buchman's statements on the recorded interview are inadmissible hearsay. The State claims that the statements are not hearsay because they were used to elicit a response from Prince. In *Strong v. State*, 538 N.E.2d 924 (Ind. 1989), our Supreme Court held that the admission of a tape recording did not violate the hearsay rule because the hearsay statements were not offered for their truth but rather to elicit a response from the defendant. The Court also upheld the trial court's admission because the trial court gave the jury an admonishment that the statements on the tape were "to be considered only as questioning and questions in order to elicit information to draw out information from Mrs. Strong." *Id.* at 928.

Our Supreme Court encountered a similar situation, but reached a different result, in *Smith v. State*, 721 N.E.2d 213 (Ind. 1999). There, the trial court admitted a videotape of a detective's interview with the defendant into evidence. During the interview, the detective told the defendant, "half of the people at the jail's [sic] called me wanting to tell me that you did it," and "[Lampley] said you did it because it was over him [Riggs] ripping you off your dope, your stash." *Id.* at 216. The defendant argued on appeal that the detective's statements were inadmissible hearsay. The State, relying on *Strong*, argued that police questions and comments in an interview may be designed to elicit responses from the defendant and, if so, are not hearsay because they are not used to prove the truth of the matter asserted. Our Supreme Court acknowledged that neither party had asked for an admonishment and that the

trial court does not have an affirmative duty to issue one absent a request to do so. *Id.* Nevertheless, the Court concluded, "[T]he lack of admonishment in this case combined with the fact that the statements appear to be assertions of fact by the detective, not mere questions, renders their admission error." *Id.*

[15] Here, the recording of Detective Buchman's interview with Prince was played in its entirety for the jury over Prince's hearsay objection. Based on the information he received from Officer Clayton, Detective Buchman told Prince:

> "I know your husband has a drug problem."

> \*\*\*\*\*

> "Your husband has a bit of a drug problem—he likes the cocaine. Let me—let me finish. He does a lot of this stuff while you're not here. He gave his car keys up to a guy because he was too high to drive."

> \*\*\*\*\*

> "[T]hey come up here to party with your husband when you're at work."

> \*\*\*\*\*

> "[Y]our husband has a dope problem."

Ex. 4 at 1:13, 1:58, 2:40, 10:50. These statements by Detective Buchman were presented as facts that Prince's husband had a drug problem and hosted parties at the house when Prince was not home. They were not questions for Prince to

answer; Prince even tried to interject at one point but was cut off by Detective Buchman, telling her "let me—let me finish."  At no point did the trial court issue an admonishment to the jury that they were to consider the recording not for the truth of the statements but as questions used to elicit information from Prince.  Furthermore, the statements were prejudicial and easily redactable. Their admission was error.

# III. Harmless Error

Nevertheless, the State contends that even if the admission of Officer Clayton's trial testimony and Detective Buchman's statements during the recorded interview were error, the errors were harmless because Prince gave a recorded confession to making a false report:

> [Detective Buchman:] "Did you guys hatch this plan that you guys were going to lie to me?"
> [Prince:] "No."
> [Detective Buchman:] "How did it come out that you decided well this is—it was at your doing?"
> [Prince:] "It was at my doing."
> [Detective Buchman:] "That was your doing?"
> [Prince:] "My doing."
> [Detective Buchman:] "Why did you do that?"
> [Prince:] "'Cuz my car."
> [Detective Buchman:] "But you knew what you told me was a lie, right?"
> [Prince:] "Yeah."

*Id.* at 4:45.

Harmless error occurs when, in light of all of the evidence in the case, any error or defect by the trial court is sufficiently minor so as not to affect the substantial

rights of a party. Ind. Appellate Rule 66(A); *see Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). Here, Prince gave a recorded confession that she lied about being carjacked, and her confession was played for the jury. Thus, the admission of Officer Clayton's testimony regarding what the informant told him and Detective Buchman's hearsay statements on the recorded interview are not reversible errors.

[18] Affirmed.

Bradford, J. and Brown, J., concur.